Dear Christopher J. McCabe Secretary
You have asked for our opinion concerning the State law that allows for suspension of driver's licenses as part of the child support enforcement program administered by the Child Support Enforcement Administration ("CSEA") of the Department of Human Resources ("DHR"). When an individual, typically a non-custodial parent, is delinquent in making child support payments, the relevant statutes authorize CSEA to notify the Motor Vehicle Administration ("MVA") of the delinquency, require the MVA to suspend the individual's driving privileges, and permit the MVA to issue a work-restricted driver's license to the individual. You pose certain questions about that law, which we restate as follows:
 (1) If the individual continues to fail to make court-ordered child support payments, may CSEA request the MVA to revoke the individual's work-restricted license?
 (2) If the CSEA has such authority, must it seek revocation in all such cases or does it have discretion not to take action in a particular case?
For the reasons set forth in this opinion, the answers to your questions are as follows:
 (1) The relevant statutes do not authorize CSEA to seek revocation of a work-restricted license. The General Assembly has authorized suspension of driving privileges of a non-custodial parent who fails to make child support payments, but has provided for the issuance of a work-restricted license to ensure that the individual may maintain employment and earnings from which the child support arrearage could be recovered. Even if the individual remains delinquent after suspension of his or her license and the issuance of a work-restricted license, CSEA has other remedies to recover child support from that income stream, such as an earnings withholding order directed to the individual's employer.
 (2) Because CSEA does not have authority to seek revocation of a work-restricted license, we need not address the second question.
 I Child Support Delinquency and Suspension of Driving Privileges
A. CSEA and Child Support Enforcement
CSEA is charged with coordinating a statewide program for child support enforcement. Annotated Code of Maryland, Family Law Article ("FL"), § 10-108. As part of those duties, CSEA collects and disburses child support payments. FL §§ 10-108(a)(8),10-108.7.
The Legislature has given CSEA various powers to enforce child support obligations. Among other things, the Legislature has authorized the suspension of an individual's privilege to drive a motor vehicle in Maryland if the individual is delinquent in making child support payments. FL § 10-119; Annotated Code of Maryland, Transportation Article ("TR"), § 16-203.[1]
Pursuant to those statutes, DHR and the MVA have adopted regulations to implement the law concerning revocation of driving privileges. FL § 10-119(e); TR § 16-203(f). See COMAR 07.07.15; COMAR 11.11.08. Administrative driver license suspension programs, such as Maryland's, have proven to be especially effective in improving child support collections.[2] See
Swank, The National Child Non-Support Epidemic,
2003 Mich.St. DCL L. Rev. 357, 368-72.
B. Notice of Proposed Suspension and Opportunity for Investigation
If an individual is delinquent in paying court-ordered child support for at least 60 days, CSEA may obtain suspension of the individual's driving privileges. FL § 10-119(b). The statute and regulations set forth certain procedures that the agency must follow before seeking suspension of driving privileges. It must notify the individual in writing that it is contemplating suspension of the license and advise the individual that he or she has a right to ask CSEA to investigate certain grounds that would militate against suspension. FL § 10-119(c); see also
COMAR 07.07.15.03C (content of written notice).
The statute allows an individual to request an investigation by CSEA of four possible grounds for not suspending driving privileges:
 (1) "The information regarding the reported arrearage is inaccurate." FL § 10-119(c)(1)(i)1. The DHR regulations elaborate on the relevant types of inaccuracy: the support obligation does not exist or the amounts specified in the notice are incorrect and the individual is less than 60 days out of compliance with the most recent support order. COMAR 07.07.15.05C(1)-(2).
 (2) "Suspension of the [individual's] license or privilege to drive would be an impediment to the [individual's] current or potential employment." FL § 10-119(c)(1)(i)2. The DHR regulations specify that the impediment to employment must be "because a driver's license is required by the employer to perform the duties of the job and a work-restricted license would not be sufficient under the circumstances." COMAR 07.07.15.05C(3). They also define "potential employment" as "a bona fide offer of employment or enrollment in job-related training which may lead to a bona fide offer of employment." COMAR 07.07.15.02B(3).
 (3) "Suspension of the [individual's] license or privilege to drive would place an undue hardship on the [individual] because of the [individual's] . . . [d]ocumented disability resulting in a verified inability to work." FL § 10-119(c)(1)(i)(3)(A); see also COMAR 07.07.15.05C(4).
 (4) "Suspension of the [individual's] license or privilege to drive would place an undue hardship on the [individual] because of the [individual's] . . . [i]nability to comply with the court order." FL § 10-119(c)(1)(i)(3)(B); see also COMAR 07.07.15.05C(5).
The regulations also provide that CSEA may allow the individual to enter into a written arrearage payment schedule agreement in lieu of suspension of driving privileges. COMAR 07.07.15.03D(1);07.07.15.04.[3] If the individual complies with such an agreement with CSEA — or with a court order that sets a payment schedule of delinquent amounts — CSEA is barred from pursuing suspension of driving privileges. FL § 10-119(c)(5).
C. Investigation and Appeal Rights
If the individual requests an investigation, CSEA is to determine whether any of the mitigating grounds listed above exist. FL § 10-119(c)(2). In connection with that investigation, CSEA is to consider the views of, and any information provided by, the custodial parent. Id.; COMAR 07.07.15.05F. If the agency determines that one of the grounds listed above applies to the delinquent individual, then the statute prohibits CSEA from seeking suspension of driving privileges. FL § 10-119(c)(4).
If CSEA determines that mitigating grounds do not exist, it is to inform the delinquent individual, who may appeal that determination to the Office of Administrative Hearings ("OAH") under the Maryland Administrative Procedure Act. FL § 101-19(c)(2)-(3). Any appeal is limited to those issues on which the individual could request an investigation. COMAR07.07.15.06C. If, as a result of the appeal to OAH, CSEA finds that a mitigating circumstance exists — e.g., license suspension would be an impediment to potential employment — it may not seek suspension of driving privileges. FL § 10-119(c)(4).
D. Referral to MVA and Issuance of Work-Restricted License
If the delinquent individual does not request an investigation by CSEA or if CSEA ultimately finds no mitigating circumstances, CSEA may notify the MVA of the individual's non-compliance with his or her child support obligations. FL § 10-119(b)(1). Upon such notification, the MVA is to suspend the individual's license. FL § 10-119(b)(2)(i); see also TR § 16-203(b)(1).[4] The MVA may then issue a work-restricted license. FL § 10-119(b)(2)(ii); TR § 162-03(b)(2).[5] In order to be eligible for a work-restricted license, an individual must be gainfully employed. COMAR 11.11.08.04B(1).[6] A work-restricted license permits the individual to commute to work, to drive during work hours in the course of employment, and to drive for purposes of maintaining or fueling a vehicle used for commuting or work-related purposes. COMAR11.11.08.02B(4)-(5); 11.11.08.04B(2).
E. Reinstatement Rights
The statutes provide for the reinstatement of suspended driving privileges under specified circumstances. FL § 10-119(d); TR § 162-03(e). In particular, the MVA must reinstate the license if ordered to do so by a court. TR § 16-203(e)(1). In addition, CSEA is obliged to notify the MVA to reinstate the license if the individual is not in arrears in child support payments, if the individual's arrearage is paid in full, if the individual has shown good faith by paying the ordered amount of support for six months, or if one of the mitigating grounds listed above exists. FL § 10-119(d); TR § 16-203(e)(2); COMAR 07.07.15.07; see also
COMAR 07.07.15.08.
 II
Whether CSEA May Seek Revocation of a Work-Restricted License
You have asked whether CSEA may request the MVA to revoke a work-restricted license if an individual continues to fail to make child support payments.
It is useful to consider the context in which such a question would arise. Your question concerns an individual who has already been issued a work-restricted license pursuant to TR § 16-203. Assuming that CSEA and MVA followed the statutes and their own regulations, we can infer certain facts. The individual is at least 60 days delinquent in making child support payments. The individual either failed to ask CSEA for an investigation of mitigating grounds or CSEA has determined that none exist and referred the individual to the MVA for suspension of driving privileges. The MVA has suspended the individual's driving privileges, but has also determined that the individual is eligible for a work-restricted license in accordance with FL § 10-119 and TR § 16-203. In other words, the individual is gainfully employed. COMAR 11.11.08.04B(1). The individual is authorized to drive only for purposes related to that employment.
No provision of the pertinent statutes or regulations authorizes CSEA to pursue further action against the driving privileges of an individual whose driving privileges have been suspended by the MVA and who has been issued a work-restricted license. Under those statutes, the discretion whether to issue a work-restricted license rests with MVA, not CSEA. See FL § 10-119(b)(2)(ii); TR § 16-203(b) (upon notice from CSEA, MVA "shall" suspend driving privileges and "may" issue a work-restricted license). The MVA has construed that authority to turn on whether the individual is gainfully employed and affirms the restrictions on the license. COMAR 11.11.08.04.[7]
Revocation of such a license — which, by definition, is solely for purposes of maintaining the individual's employment — would likely eliminate a primary source of child support payments and thus be counter-productive to the underlying purpose of ensuring that the non-custodial parent provides financial support for his or her child. CSEA has other remedies under the law to direct a portion of the earnings from that employment to the parent's child support obligations. For example, CSEA may obtain an earnings withholdings order to require the individual's employer to forward a portion of the individual's wages to the child support agency. FL § 10-120 et seq. In addition, CSEA may also intercept any federal or State income tax refund that may be due to the individual. See 26 U.S.C. § 6305; 42 U.S.C. § 652(b) (interception of federal income tax refund); see also FL § 10-113 (interception of State income tax refund). By contrast, revocation of a work-restricted license might well eliminate an available source of child support payments.
The legislative history of FL § 10-119 and TR § 16-203 confirms that the statutes are currently designed to induce non-custodial parents to pay child support in a timely manner while preserving their ability to make those payments. As originally enacted in 1995, the statutes stated that CSEA "shall" notify the MVA of any individual who had fallen at least two months behind in child support payments and further stated that MVA "shall" suspend that individual's driving privileges in Maryland with the proviso that it "may" issue a work-restricted license. FL § 10-119(b) (1999 Repl.Vol.); TR § 16-203(b) (1998 Repl.Vol.). While the original law allowed the individual to contest the accuracy of the information concerning his or her delinquency, CSEA had no discretion to refrain from seeking suspension of driving privileges if it found that the information concerning the delinquency was accurate.
The 2004 amendment of FL § 10-119 conferred discretion on CSEA to decide whether to refer the delinquent individual to the MVA for license suspension. In particular, the word "shall" was replaced with "may" in FL § 10-119(b)(1). See Chapter 509, Laws of Maryland 2004; see also Floor Reports for Senate Bill 329 and House Bill 605 (2004) at p. 1 ("This bill . . . makes it discretionary, rather than mandatory, for [CSEA] to notify the MVA to suspend the obligor's license . . ."). When DHR amended its regulations later that year, it did so in part "to make it discretionary for [CSEA] to refer information to the [MVA]." Statement of Purpose for Amendment of COMAR 07.07.15, 31 Md. Reg. 1314 (August 20, 2004). The purpose of conferring such discretion was to avoid the possibility that an automatic license suspension would interfere with the individual's ability to generate income. In the same legislation, the Legislature limited CSEA's authority to obtain suspension of driving privileges if the suspension would have an adverse effect on the individual's employment.[8] Under the 2004 amendments, if an investigation reveals that a license suspension would be an "impediment" to "current or potential employment," then CSEA may not even refer the individual to MVA for a suspension at all, much less a suspension accompanied by the issuance of a work-restricted license. Undoubtedly, in adding this provision to the statute the General Assembly was not concerned simply about adverse effects on the individual's employment, but the potentially adverse effect on the CSEA's ability to recover child support from that individual if he or she became or remained unemployed due to the loss of driving privileges.
It might be argued that the revocation of a work-restricted license — or at least the threat of revocation — would enhance CSEA's collection efforts. An analogy might be made to the statute that provides for the suspension of an occupational license of one who is delinquent in paying child support. See
FL § 10-119.3. That law clearly allows for the suspension of an occupational license, even though such a suspension could adversely affect the delinquent parent's ability to earn money to pay the arrearage and continuing child support obligations. The presumption underlying such a statute is that the threat of an occupational license suspension is an effective way to induce non-custodial parents to fulfill their child support obligations.See House Conf. Report No. 104-651 (July 30, 1996), p. 1435, 1996 U.S. Code Cong. Adm. News 2494. ("Placing licenses to these vital activities in jeopardy is . . . exceptionally effective . . .").[9]
However, the analogy is imperfect. A delinquent individual may avoid suspension of an occupational or professional license only if he or she successfully contests the accuracy of the arrearage. FL § 10-119.3(f). By contrast, in FL § 10-119, the Legislature has granted CSEA broader discretion whether to seek suspension of a driver's license and has specified mitigating circumstances, including the possible adverse effect on the individual's employment, that would bar the use of this remedy. It has also delineated specific notice, hearing, and appeal requirements before driving privileges may be suspended with a work restriction. It seems unlikely that the Legislature contemplated revocation of a work-restricted license without identifying the circumstances and procedures for such action.
Thus, it is evident that the statute does not authorize CSEA to seek revocation of a work-restricted license for a failure to fulfill child support obligations.[10] Given that conclusion, there is no need to address your second question as to whether CSEA would be required to seek revocation of a work-restricted driver's license in some circumstances.
 III Conclusion
In sum, for the reasons set forth above, we conclude that CSEA may not seek revocation of a work-restricted license. Nothing in FL § 10-119 or TR § 16-203 authorizes CSEA to take such action. In those statutes, the General Assembly authorized suspension of driving privileges of a non-custodial parent who fails to make child support payments, but provided for the issuance of a work-restricted license to ensure that the individual could maintain employment and earnings from which child support could be paid or recovered. Even if the individual remains delinquent after suspension of his or her license and the issuance of a work-restricted license, CSEA has other remedies to recover child support from that income stream, such as an earnings withholding order directed to the individual's employer.
J. Joseph Curran, Jr.Attorney General
Robert N. McDonaldChief CounselOpinions and Advice
[1] As a general rule, an individual may not drive a motor vehicle in Maryland without a Maryland driver's license. TR § 16-101(a)(1). The Maryland Vehicle Law contains a number of exceptions to this requirement, thus conferring the privilege to drive in Maryland on certain categories of individuals who do not possess a Maryland driver's license. See, e.g., § 16-102(a)(9) (individuals licensed in other states, under specified circumstances); see also 88 Opinions of the Attorney General
___ (2003) [Opinion No. 03-014 (September 12, 2003)], slip op. at pp. 1-2 (describing various exceptions to Maryland license requirement).
The statutes and regulations relating to non-payment of child support provide identical criteria for the suspension of a driver's license and driving privileges in Maryland. For ease of reference, this opinion will use the term "driving privileges" to encompass both a Maryland driver's license and other privileges to drive in Maryland.
[2] Federal law makes certain grants to a state contingent on the state's creation of a child support enforcement program that satisfies federal standards. 42 U.S.C. § 651 et seq. In the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, § 369, 110 Stat. 2105, 2251, Congress amended that law to require "procedures under which the State has . . . authority to withhold or suspend, or to restrict the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support. . . ." See 42 U.S.C. § 666(a)(16); see generallyKansas v. United States, 214 F.3d 1196 (10th Cir.), cert.denied, 531 U.S. 1035 (2000) (upholding constitutionality of 1996 amendment).
Maryland's law, which pre-existed this amendment, appears to satisfy the federal requirement. The federal law does not specify whether a State agency should have authority to revoke a work-restricted license when an individual continues to be delinquent in child support payments and therefore does not dictate any particular answer to the questions you have posed.
[3] Such an agreement provides for payment of the arrearage on a schedule taking into account the individual's ability to pay.See COMAR 07.07.15.04C.
[4] A suspension for failure to pay child support is not subject to the usual one-year limitation on driver license suspensions. TR § 162-08(a)(3)(v).
[5] The MVA is to provide advance written notice to the individual of the action it intends to take. TR § 16-203(c); COMAR 11.11.08.03. The individual has a statutory right to appeal the MVA action; any such appeal, however, is limited to issues of mistaken identity. TR § 16-203(d).
[6] Under the MVA regulations "gainfully employed" means:
 (a) To have employment with private industry or a government agency, or to be self-employed;
 (b) If not self-employed to have to complete an Employee Withholding Allowance Certificate (Form W-4, Internal Revenue Service); and
 (c) To file State and federal income tax returns.
COMAR 11.11.08.02B(3).
[7] The MVA regulation allows for cancellation of a work-restricted license if the MVA "receives notice from CSEA to remove the work restriction." COMAR 11.11.08.04B(4)(a). On its face, this somewhat ambiguous provision could relate to a situation in which CSEA is required to notify MVA to reinstate the individual's driving privileges without a work restriction.See FL § 10-119(d); TR § 16-203(e)(2). On the other hand, it could relate to a situation in which CSEA advises the MVA of information that would lead MVA to maintain a suspension without a work-restricted license for reasons consistent with the statutes and MVA regulations — e.g., CSEA may have superior information concerning the individual's employment status. In any event, the relevant statutes do not authorize CSEA to direct the MVA to revoke a work-restricted license.
[8] Witnesses before the legislative committees considering these amendments recounted a number of anecdotes in which the suspension of a driver's license frustrated an individual's ability to pay an arrearage. Recording of Hearing on Senate Bill 605 before Senate Judicial Proceedings Committee (February 12, 2004). Background information in the legislative files cites the example of an individual released from prison who was unable to find employment and pay an arrearage due to suspension of his driver's license. Floor Reports for Senate Bill 329 and House Bill 605 (2004).
[9] This congressional report related to federal legislation requiring states to enact such laws. See footnote 2 above.
[10] Of course, the MVA may suspend or revoke a work-restricted license issued under TR § 16-203 for the same reasons that it may suspend or revoke any other license. See, e.g., TR § 16-205
(suspension or revocation as a result of certain drug and alcohol related convictions), TR § 16-205.1 (suspension for refusal to submit to chemical test), TR § 16-206 (suspension or revocation for various reasons); see also COMAR 11.11.08.04B(3) (work-restricted license valid "only when no other suspensions, cancellations, revocations, refusals, or disqualifications exist . . ."). *Page 92